# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | No. 10-776 |
| MAMADOU BARRY | : | |

### MEMORANDUM

**Schiller, J.**  December 5, 2011

A jury convicted Mamadou Barry under two federal statutes for calling in a false bomb threat against his daughter to Philadelphia International Airport. Currently before the Court are Defendant's post-trial motions for judgment of acquittal or, alternatively, for a new trial, and for dismissal of one of the two counts. For the following reasons, the Court will grant the motion for dismissal of one count, deny the motion for judgment of acquittal, and defer a decision on the motion for a new trial pending a hearing.

## I. BACKGROUND

Hadiatou Barry, the daughter of Mamadou, was scheduled to fly to Jamaica to attend her foster mother's wedding on the morning of June 17, 2010. (Aug. 1, 2011 Tr. at 41.) On the evening before her flight, Hadiatou went to her parents' house to see her mother, Adama Barry. (*Id.* at 45-46.) During the visit, Adama mentioned that she planned to go to her native country of Guinea, and Hadiatou took away Adama's green card and passport to prevent her from traveling. (*Id.* at 46-47.) Hadiatou testified that she was concerned about her mother's safety in Guinea due to election-related violence, and that she thought at the time that Adama wanted her to take the papers. (*Id.* at 46-47, 57-58.) After Hadiatou left, however, Adama reported the incident to the police. (*Id.* at 101-03.)

Mamadou was not present during his daughter's visit with Adama, and Hadiatou testified that she did not speak to him before she arrived at the airport the next morning for her flight to Jamaica. (*Id.* at 48.)

Later that night, at approximately 9:39 p.m., a police dispatcher at Philadelphia International Airport received a telephone call from a man who said his name was Mohamed.[1] (*Id.* at 30-33; Gov't Ex. 1A [June 16, 2010, 9:39 p.m. Call Tr.].) The caller, whose voice was later identified as Mamadou's, stated, "I want to notify you with somebody have a bomb in his bag and traveling." (June 16, 2010, 9:39 p.m. Call Tr.; Aug. 1, 2011 Tr. at 49.) He added that the person carrying the bomb was a woman named Hadiatou Barry and that he thought she was traveling to Jamaica in the next week. (June 16, 2010, 9:39 p.m. Call Tr.) Mamadou did not mention during the call that Hadiatou was his daughter, and he refused to speak with a supervisor. (*Id.*) The call came from a number that Hadiatou testified was her father's business phone number. (Aug. 1, 2011 Tr. at 68.) Later the same night, at approximately 10:08, a police officer at Philadelphia International Airport received a second call from a man whose voice was later identified as Mamadou's. (*Id.* at 34-35, 49; Gov't Ex. 2A [June 16, 2010, 10:08 p.m. Call Tr.].) During that call, Mamadou provided Hadiatou's date of birth, "[j]ust to make it easy for you." (June 16, 2010, 10:08 p.m. Call Tr.) The call came from a blocked number that was subsequently traced to Mamadou's cell phone. (Aug. 1, 2011 Tr. at 105-06.)

Following these calls, Federal Bureau of Investigation ("FBI") Special Agent John Kirk determined that Hadiatou's flight was scheduled to depart from Baltimore/Washington International

---

[1] Mohamed is the English version of the French name Mamadou. (Aug. 1, 2011 Tr. at 67.)

Airport ("BWI") the next morning. (*Id.* at 36-38.) Kirk briefed agents at BWI about the bomb threat early in the morning on June 17, 2010. (*Id.* at 39-40.) When Hadiatou arrived at BWI later that morning, she was approached by agents and asked to step aside while a dog sniffed her bag. (*Id.* at 43.) She was then questioned for 30 to 45 minutes before the agents permitted her to board her flight. (*Id.* at 43-44.) The agents did not find any explosives in Hadiatou's bag and determined that the threat was not credible. (*Id.* at 73-75.) Hadiatou testified that she never told anyone she had a bomb in her bag. (*Id.* at 45, 48, 68-69.)

On the same day, a detective for the Philadelphia Police Department made a recorded call to Mamadou to ask him about the bomb threat. (*Id.* at 80-81; Gov't Ex. 3A [June 17, 2010 Call Tr.] During the call, Mamadou expressed anger that Hadiatou had taken his wife's travel documents but denied that he had called in the bomb threats. (June 17, 2010 Call Tr.)

When Hadiatou returned from Jamaica, she was again interviewed by agents at BWI. (August 1, 2011 Tr. at 50.) At that time, she identified the voice on tapes of the two June 16, 2010 phone calls as her father's. (*Id.* at 49.) Hadiatou told the agents that she did not get along with her parents because they were strict Muslims who believed she was too Americanized. (*Id.* at 50-51.) She said that her father disapproved of her decision to attend school and her refusal to marry at the age of fifteen. (*Id.* at 51.) Hadiatou told the agents that she believed her father had made the false bomb threat to prevent her from going to Jamaica and as retaliation for a protection order that she had sought against him. (*Id.* at 59-60, 74.)

Mamadou was arrested by the FBI on November 8, 2010. (*Id.* at 83.) He again denied making the calls when questioned after his arrest, but at trial the defense did not dispute that Mamadou had made them. (*Id.* at 26, 83-84.) Following a two-day jury trial, Mamadou was convicted of conveying

3

false information about a bomb threat under two federal statutes, 18 U.S.C. § 844(e) and 49 U.S.C. § 46507.

## II.     STANDARDS OF REVIEW

### A.     Rule 29

Rule 29 of the Federal Rules of Criminal Procedure provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed R. Crim. P. 29(c)(2). The court must view the evidence in the light most favorable to the prosecution and must uphold the verdict provided that any rational trier of fact could have found the defendant guilty beyond a reasonable doubt given the available evidence. *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Defendants face an uphill battle under this "highly deferential standard." *United States v. Carbo*, 572 F.3d 112, 119 (3d Cir. 2009). A challenge to the sufficiency of the evidence supporting a jury verdict "should be confined to cases where the prosecution's failure is clear." *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (internal quotation marks omitted). A court "must be ever vigilant in the context of Federal Rule of Criminal Procedure 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133.

### B.     Rule 33

Rule 33 of the Federal Rules of Criminal Procedure permits a court to vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Unlike a Rule 29 motion, when considering a Rule 33 motion a court does not view the evidence in the light most favorable to the government, but rather exercises its own judgment in evaluating the government's

4

case. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Nonetheless, "a district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (internal quotation marks omitted). Additionally, "motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003). A court must grant a new trial if it concludes that the trial was beset by cumulative errors that so infected the jury's deliberations that they substantially influenced the trial's outcome. *United States v. Copple*, 24 F.3d 535, 547 n.17 (3d Cir. 1994).

## III. DISCUSSION

### A. Motion for Post-Conviction Dismissal

Defendant asks the Court to dismiss one of the two counts in the indictment because punishing him under both 18 U.S.C. § 844(e) and 49 U.S.C. § 46507 for the same conduct would violate his constitutional right against double jeopardy. (Mem. of Law in Supp. of Def.'s Mot. for J. of Acquittal Pursuant to Fed. R. Crim. P. 29, New Trial Pursuant to Fed. R. Crim. P. 33, and Post-Conviction Dismissal ["Def.'s Mem."] at 15-18.)

The Double Jeopardy Clause of the Fifth Amendment "bars courts from 'prescrib[ing] greater punishment than the legislature intended' to impose for a single offense." *United States v. Miller*, 527 F.3d 54, 70 (3d Cir. 2008) (quoting *Rutledge v. United States*, 517 U.S. 292, 297 (1996)). Courts "presume that where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." *Rutledge*, 517 U.S. at 297 (internal quotation

marks omitted). To determine whether two statutes define the same offense, courts consider "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also Rutledge*, 517 U.S. at 297. If the offenses do not meet the *Blockburger* test, they are the same offense and multiple punishments are impermissible unless the legislature clearly intended otherwise. *Miller*, 527 F.3d at 70-71.

The elements of 18 U.S.C. § 844(e) are that: (1) the defendant acted willfully; (2) by mail, telephone, telegraph, or other instrument of commerce; and (3) made a threat or maliciously conveyed false information, knowing the information to be false, about an attempt; (4) to kill, injure, or intimidate an individual or to damage or destroy a building, vehicle, or other real or personal property; (5) by means of fire or explosive. *See United States v. Spruill*, 118 F.3d 221, 224-25 (4th Cir. 1997). The elements of 49 U.S.C. § 46507 are that: (1) the defendant imparted or conveyed false information concerning an attempt to be made to carry explosives onto an aircraft; (2) he knew the information to be false; (3) he acted willfully and maliciously, or with reckless disregard for the safety of human life; and (4) under the circumstances the information the defendant conveyed could reasonably be believed. *See United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002). Thus, both statutes require that the defendant acted willfully, maliciously, and with knowledge that the information was false. The elements setting forth the nature of the threat—attempting to damage or destroy with explosives in § 844(e) and attempting to carry explosives in § 46507—are also essentially the same. While § 46507 specifically concerns threats about explosives on airplanes, § 844(e) concerns threats to property more generally, which includes airplanes. Both statutes also require that the threat could be reasonably believed, although the requirement is not explicit in the text of § 844(e). *See Spruill*, 188 F.3d at 228 (noting that "§ 844(e) proscribes only 'true' threats").

Only one of the statutes requires proof of an element that the other does not; § 844(e) requires the use of a telephone or other instrument of commerce. Thus, the two statutes proscribe the same offense under the *Blockburger* test, and the Court has not uncovered any legislative history indicating that Congress clearly intended to impose separate punishments under these statutes.

In cases where defendants received multiple convictions for the same offense, the Third Circuit has in the past directed district courts to leave the convictions intact and instead impose a general sentence on both counts "for a term not exceeding the maximum permissible sentence on that count which carries the greatest maximum sentence." *United States v. Xavier*, 2 F.3d 1281, 1292 & n.13 (3d Cir. 1993) (internal quotation marks omitted); *see also, e.g.*, *United States v. Blyden*, 930 F.2d 323, 328 (3d Cir. 1991); *Gov't of V.I. v. Brathwaite*, 782 F.2d 399, 407-08 & n.9 (3d Cir. 1986). However, "[t]o the extent those cases can be read as permitting a general sentence on multiple convictions to cure a Double Jeopardy problem, the Supreme Court has since rejected such an approach." *United States v. Ward*, 626 F.3d 179, 185 n.8 (3d Cir. 2010) (citing *Rutledge*, 517 U.S. at 307). Instead, the proper approach is for the district court to exercise its discretion to vacate the conviction on one of the two counts and dismiss that count prior to sentencing. *See Ward*, 626 F.3d at 185; *Miller*, 527 F.3d at 74 (citing *Ball v. United States*, 470 U.S. 856, 864 (1985)). Defendant requests dismissal of the count under 18 U.S.C. § 844(e), and the Government has declined to take a position on which count should be dismissed, even when directly questioned by the Court. Accordingly, in the absence of any compelling reason to choose one count over the other, the Court will exercise its discretion to dismiss the count under 18 U.S.C. § 844(e).

**B.     Motion for Judgment of Acquittal**

Defendant argues that he should be acquitted because the Government failed to present

7

evidence sufficient for a rational trier of fact to find that he made the phone call reporting a bomb threat with willful or malicious intent, as required for conviction under 49 U.S.C. § 46507. (Def.'s Mem. at 2.) Defendant emphasizes that he must "have had actual knowledge that his prohibited conduct was illegal." (*Id.* at 3 (quoting *United States v. Cheeseman*, 600 F.3d 270, 281 (3d Cir. 2010)).) He argues that the Government's circumstantial evidence of intent only indicates what he was thinking after making the bomb threat—not his actual knowledge at the time of the threat. (*Id.* at 5-6.)

The Government presented evidence that Defendant had a strained relationship with Hadiatou, that he was angry with her for taking Adama's travel documents, that he did not want Hadiatou to go to Jamaica, that he took steps to hide his identity while making the phone calls to Philadelphia International Airport, and that he repeatedly lied about making the phone calls when questioned by authorities. Viewed in the light most favorable to the prosecution, a reasonable jury could infer from this circumstantial evidence that Defendant acted willfully and maliciously. *See United States v. McKee*, 506 F.3d 225, 235 n.9 (3d Cir. 2007) ("[C]ircumstantial evidence is routinely offered to satisfy the intent element in criminal cases."). Therefore, the Court will deny Defendant's motion for judgment of acquittal.

### C. Motion for New Trial

Defendant argues that a new trial is warranted for two reasons: (1) "the manifest weight of the evidence suggests that Mamadou legitimately suspected Hadiatou had a bomb," and (2) the Government inadvertently suppressed potentially material impeachment evidence. (Def.'s Mot. at 8.)

### 1. *Weight of the Evidence Regarding Defendant's State of Mind*

In support of his first argument, Defendant asserts that Hadiatou's testimony was critical to the Government's case and was not credible because Hadiatou "exhibited herself to be someone who exaggerates and alters her story depending on her audience." (*Id.* at 9.) Defendant cites several alleged inconsistencies or falsehoods in Hadiatou's testimony and earlier statements to agents: (1) when first asked whether she had said anything to make Mamadou think she planned to travel with a bomb, she replied, "I don't—I didn't think so," then changed her answer to "I didn't" (Aug. 1, 2011 Tr. at 68-69); (2) she testified that she had thought Adama had wanted her to take her travel documents, but admitted that her mother had subsequently traveled to Guinea twice without problems (*id.* at 47, 58-59); (3) she testified that she "probably" told agents that she had taken her mother's travel documents to explain why her father might make a bomb threat, but the agent did not remember her mentioning this fact (*id.* at 64-65, 76); (4) she identified her father as someone who may have made the phone calls before even hearing the tapes (*id.* at 78); (5) she told an agent that she had obtained a protection from abuse order against her father that expired, when in fact her request for an order was not granted, and then testified that she had never told the agent the order expired (*id.* at 59-60, 76-77); (6) she told a "tall tale" about how Mamadou had sent her and her sister to Guinea in 2009, where they were taken into custody and beaten by government officials who said Mamadou had paid them (*id.* at 53-55); and (7) she could not explain why phone records showed a 50-second call from Mamadou's phone to her phone on the morning of her flight to Jamaica (*id.* at 66-67, 69-70, 98).

The Government's case did not rely entirely on Hadiatou's testimony; Defendant's own words and actions also demonstrated his mental state. Moreover, several of the supposed

9

inconsistencies are not inconsistencies at all—for example, an answer of "I didn't think so" does not contradict an answer of "I didn't," and Adama's later trips to Guinea do not negate Hadiatou's subjective belief about what Adama wanted at the time she took her travel documents. Hadiatou also testified that fear may have affected her responses when she was questioned at the airport: "As you can imagine, sir, I was very scared that day. Somebody calling and saying that I had a bomb on an airplane? You can imagine I was scared, so many things were running through my mind." (*Id.* at 65.) Furthermore, the essentials of Hadiatou's alleged "tall tale" were corroborated by a State Department report, which found that a lieutenant in the Guinean police was called by an unknown relative in the United States and asked to prevent Hadiatou and her sister from boarding a flight back to the United States in 2009. (*Id.* at 107.) According to the report, the police took the sisters into an office at the airport and slapped at least one of them for being insolent. (*Id.* at 107-08.) Travel letters were eventually submitted so that the sisters could return to the United States. (*Id.* at 108.) Defendant's quibbles about the details of this story are insufficient to cast doubt on Hadiatou's testimony as a whole. This is not a case in which the weight of the evidence suggests "a serious danger that a miscarriage of justice has occurred." *Davis*, 397 F.3d at 181. Because the jury's verdict is not contrary to the weight of the evidence, the Court will not grant Defendant's motion for a new trial on this basis.

　　　　　　　　　2.　　　*Withholding of Potential Impeachment Evidence*

Defendant also argues that he is entitled to a new trial because Hadiatou testified that she wrote a statement for the agents during questioning at BWI on June 17, 2010, which the Government never turned over to Defendant in discovery. (Def.'s Mem. at 13-15; Aug. 1, 2011 Tr. at 65.) Defendant contends that this written statement could have opened a new line of impeachment.

(Def.'s Mem. at 15.) When Defendant's counsel requested the written statement at trial, the Government's counsel agreed to investigate where it might be. (Aug. 2, 2011 Tr. at 6.) Following Defendant's conviction and motion for a new trial, Defendant's counsel interviewed Hadiatou about the statement. (Def.'s Supplemental Mem. in Supp. of His Mots. for a New Trial Pursuant to Fed. R. Crim. P. 33 and Post-Conviction Dismissal at 1.) Hadiatou told him that she had provided a written, multiple-page statement to the agents but claimed that she could not remember its contents. (*Id.* at 1-2.) The Government now maintains that no written statement was taken. (Gov't's Resp. to Def.'s Supplemental Post-Trial Mots. Under Fed. R. Crim. P. 33 at 2.)

Because a question of fact exists as to whether Hadiatou provided a written statement on June 17, 2010, the Court will defer a decision on Defendant's motion for a new trial pending a hearing on this issue prior to sentencing.

**IV. CONCLUSION**

The Court will grant Defendant's motion for post-conviction dismissal of one count and vacate the conviction under 18 U.S.C. § 844(e). Having considered Defendant's arguments and reviewed the record, the Court finds no basis to acquit Defendant of the remaining count under Rule 29. The Court will therefore deny Defendant's motion for judgment of acquittal. Finally, the Court will defer a decision on Defendant's motion for a new trial under Rule 33 pending a hearing to determine whether Hadiatou provided a written statement to agents at BWI. An Order consistent with this Memorandum will be docketed separately.